IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| M.V.  b/n/f J.C., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CA:   No. 4:18-CV-00401 |
| | § | |
| CONROE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION TO SUBMIT ADDITIONAL EVIDENCE IN IDEA
APPEAL AND DISCOVERY CONCERNING SECTION 504, ADA AND
SECTION 1983 CLAIMS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, M.V., by next friend J.C., Plaintiff, and files this Motion to Submit

Additional Evidence in the IDEA appeal and undertake discovery concerning the  Section

504, ADA and Section 1983 Claims and in  support  thereof  would  show  the  Court  as

follows:

**I.**

**BACKGROUND INFORMATION**

1.     Plaintiff filed the Complaint in this case as an appeal from the decision of a Special

Education Hearing Officer for the State of Texas, Docket No. 027-SE-1017 styled *M.V.*

1

*b/n/f J.C. v. Conroe Independent School District* under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 (a)-(f).

2.      Plaintiff further filed two additional claims, the second claim based on discrimination under Section 504 Rehabilitation Act of 1973, 28 U.S.C. §794, and the Americans with Disabilities Act, 42 U.S.C. §12132. (the ADA).[1] The third claim is based upon discrimination under Section 1983 the Civil Rights Act, 42 U.S.C. §1983. The special education due process hearing officer did not have jurisdiction over these other claims and thus they were not part or adjudicated upon in the original IDEA administrative hearing. Some of the same evidence relates to all claims but there is also a great deal of information and evidence that relate only to these additional claims and needs to be developed as part of these proceedings. These separate claims are not a re-hash of the IDEA claims and need to be treated separately and the Plaintiff should be permitted to undertake discovery so that they can obtain the proof of such claims from the Defendant the only party that has the relevant information and data that proves the deliberate and intentional discrimination that occurred in M.V.'s case when Conroe used a Coordination of  Service (COS)[2] meeting of

---

[1] M.V. is a "disabled/handicapped" individual and "qualified individual with a disability as defined in 29 U.S.C. Section 705 and 42 U.S.C Section 12131(2). Conroe ISD is a public entity under 42 U.S.C. Section 12131(1).

[2] A COS stands for Coordination of Service Meeting which is the Conroe staff meeting pre ARDS or MDRS that they claim are necessary preparation for the meeting. The Respondent acknowledged in their Closing Argument in the administrative hearing that the holding of a COS is a policy and procedure of the school district.

staff to ensure that the Manifestation Determination Review (MDR)[3] result was what the administration required. Conroe does not use Coordination of Service meetings in the discipline of non-disabled students. These meetings are also sometimes called staffing's.

3.     IDEA provides that any party aggrieved by the findings and decision of a Special Education Hearing Officer may bring a civil action in a district court of the United States without regard to the amount in controversy. 20 U.S.C. § 1415 (i) (2) (A) and further that the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i) (2) (C). [Emphasis added] When the language of a statute is clear and unequivocal it should be interpreted and applied as written by Congress.[4] However, in connection with the issue of additional evidence the Courts have created barriers that should not exist and thus there are several conflicting cases and conflicting decisions between the different circuits. This is even though the Merriam Webster definition of "shall" allows for no such ambiguity.[5]

## II.

## NEED FOR IDEA ADDITIONAL EVIDENCE

---

[3] 34 C.F.R. 300. 530 (e)

[4] It is a fundamental principle of the Common Law that a court is bound to apply the **plain language of a statute** to accomplish the intent of the law makers. If the language is clear and unambiguous, the court will not look to rules of construction or to legislative history; it will simply apply the language.  See https://leg.colorado.gov/agencies/office-legislative-legal-services

[5] 1 archaic a **:** will have to **:** must b **:** will be able to **:** can

  2 a —used to express a command or exhortation
- you shall go

  b —used in laws, regulations, or directives to express what is mandatory
- it shall be unlawful to carry firearms

3

4.      The Hearing Officer limited the time for both parties at the hearing to four hours for both presentation of their case in chief and cross-examination. It was stated that this was due to the limitation of the issues. This was not a fair or reasonable action and in fact denied the Petitioner a reasonable opportunity to present their case and denied them a fair and impartial hearing and thus justice. A hearing officer has discretion to control the length of a hearing, but this discretion should not be used to deny a party the ability to present their case. This is particularly so when the Plaintiff has the burden of both producing evidence and the burden of proof. M.V. had two expert witnesses he wanted to testify at the due process hearing.  Dr. Graciela F. Reyes-McDonald, a licensed psychologist and licensed specialist in school psychology, testified at the hearing but Dr. Akalita Ross, a licensed psychologist and expert in foster care, was not available on the date set for the hearing. The hearing officer set the hearing for the last day that complied with the legal requirements for an expedited behavior hearing.[6] Dr. Ross was unavailable on that date as she had duties in the Harris County Mental Health Court as a clinician every Wednesday. The two experts were not duplicative and were testifying as to different issues. Dr. Reyes-MacDonald as an LSSP was dealing with the procedures and practical aspects of the MDR that was held in respect of the Plaintiff and how this MDR got the answer wrong. Dr. Ross as a licensed

---

[6] 34 C.F.R. 300.532

(c)Expedited due process hearing.

 (2) The SEA or LEA is responsible for arranging the expedited due process hearing, which must occur within 20 school days of the date the complaint requesting the hearing is filed. The hearing officer must make a determination within 10 school days after the hearing.

psychologist was to deal more with the actual behavior and the manifestation attributes of ADD and specifically about trauma experienced by foster children, its impact on the brain and the way such trauma manifests itself in their behavior. Thus, it was important that the hearing officer hear such expert opinion as to M.V. and this particular discipline infraction as the MDR never even considered these important facts about M.V.'s history. The hearing officer refused to continue the hearing till the next day to allow Dr. Ross to testify. Thus, the Plaintiff requests that such testimony be allowed to be added to the record. The school district used two experts but seem to think the Plaintiff is wasting the court's time when they seek the same privilege.

5.     An additional issue has arisen in this case. Dr. Ross is no longer available to testify. When asked to prepare an expert report in accordance with the Federal Rules of Procedure she indicated that she no longer wished to involve herself in the dispute. As this evidence is crucial to the Plaintiff's case they have hired Dr. Harris a licensed psychologist to undertake a forensic review of the documentation and M.V.'s foster history and educational records and prepare a report with his opinions as to the manifestation of M.V.'s disability in connection with his behavior and the discipline he faced. Dr. Harris has similar credentials and experience as Dr. Ross and can provide the information and evidence the Plaintiff needs. A copy of his expert report is attached hereto as Exhibit "A". Dr. Harris's CV is attached hereto as Exhibit "B" and his fee agreement as Exhibit "C". Plaintiff requests that the court allows the deposition of Dr. Harris and that deposition and his expert report to be added to the evidence in the appeal of the IDEA decision, and utilized in the prosecution of the other claims.

III.

## CASELAW IN THE 5TH CIRCUIT

6.      There is no clear ruling from the Fifth Circuit on this issue. There are some references in some decisions which appear to indicate an acceptance of additional evidence. For instance, in *Seth B.  v Orleans Parish School Board*, No. 15-30164 (5th. Cir.  January 13, 2016) determined that when requested by a party, additional evidence must be allowed by the court, but an evidentiary hearing is not necessarily required, finding additional evidence in the nature of affidavits, exhibits and depositions attached to a summary motion complied with the statute. In the Texas District Courts there is no harmony in the rulings with some courts allowing additional evidence and others not. There is currently an appeal in the 5th Circuit from a decision from the Southern District where Judge Vanessa Gilmore denied a Motion for Additional Evidence without explanation or any discussion and merely one word "denied".[7] That case involved additional evidence not only for the IDEA appeal but also in respect of Section 504 and ADA claims as part of the Federal Complaint. It is extremely dangerous to allow summary judgments in cases where the Plaintiff has not been allowed to conduct reasonable and appropriate discovery. That case has been briefed and is awaiting a decision which will have to address this situation directly.

7.      A Texas example is *T.C. v. Lewisville Indep. Sch. Dist*., 115 LRP 1749, *4 (January 14, 2015), that Court cited to the First Circuit Decision in *Town of Burlington v. Dept. of Educ*., 736 F.2d 773 at 790-791 to grant Plaintiffs' attempt to admit evidence

---

[7] E.R. by next of friend E.R.; S.R; K.R., No. 17-20494 On Appeal from the United States District Court, Southern District of Texas, No. 4:16-CV-58, Honorable Vanessa J. Gilmore, Presiding.

6

concerning an expert who testified but was later unable to provide rebuttal testimony. In *Marc V. v. North East Independent School District*, 455 F. Supp. 2d 577, 588 (W.D. Texas - San Antonio 2006) the court opined that while the Fifth Circuit has not yet directly addressed the scope of IDEA's "additional evidence" provision, it was "probable" that the Fifth Circuit would adopt the First Circuit *Town of Burlington* standard because it represents the majority approach.

In ruling on a Motion to allow additional evidence in another case the Eastern District Court ruled[8]:

"As noted above, the IDEA's framework directs courts to "hear additional evidence at the request of a party" and Fifth Circuit opinions are clear that additional evidence should be considered as part of the District Court's *de novo* review of Special Education Hearing Officer's decisions under the IDEA. *Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 382 -383 (5th Cir. 2007) (citing *Teague Indep. Sch. Dist. v. Todd L.,* 999 F.2d 127, 131 (5th Cir.1993) ("the hearing officer's findings are not conclusive, and the district court may take additional evidence and reach an independent conclusion based upon the preponderance of the evidence."). However, as both parties here concede, the Fifth Circuit has yet to directly address how "additional evidence" is defined in this Circuit. As the District Court of the Southern District of Texas has explained

> The Fifth Circuit has yet to consider IDEA's additional evidence language; however, our sister courts have followed the majority of circuits by applying the *Town of Burlington* standard to determine what constitutes permissible "additional evidence." The general consensus is that IDEA's additional

---

[8] E.C.  v Lewisville ISD case #  4-11-cv-00056-RAS-DDB  3/29/2012 item number 17 Memorandum Opinion and order regarding Plaintiff's Motion to Present Additional Evidence.

evidence provision is limited, and the decision of whether to allow additional evidence is within the discretion of the district court. This authority is necessary to protect the role of the administrative hearing as the primary forum in which to resolve disputes regarding IEPs-to avoid turning the administrative hearing into a mere dress rehearsal followed by an unrestricted trial de novo in the district court. If parties could always introduce additional evidence in the district court to patch up holes in their administrative case, administrative proceedings would not longer receive due weight. Courts should limit or disallow testimony for all who did, or could have testified before the administrative hearing. In the absence of special circumstances, courts should ordinarily exercise [their] discretion in favor of excluding the belatedly offered evidence.

*D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp.2d 603, 616 (S.D. Tex. 2009) (internal quotations and citations omitted). And, it has been noted in this District by Judge Schell that "[a]lthough the *Burlington* court declined to adopt a rigid rule precluding the testimony of all who did, or could have, testified at the administrative hearing, it noted that exclusion would be the proper result in the majority of the cases." *S.H. ex rel A.H. v. Plano Indep. Sch. Dist.*, 2009 WL 500180, 2 (E.D. Tex. 2009) (citing *Marc V. v. North East Indep. Sch. Dist.*, 455 F.Supp.2d 577, 587 (W.D. Tex. 2006), *aff'd,* 242 Fed. Appx. 271 (5th Cir. 2007)

The Court agrees that Section 1415's requirement that the Court consider additional evidence upon the request of a party does not apply to any evidence that was available or readily discoverable at the time of the administrative hearing.  However, the Court finds that Section 1415 permits – and in fact mandates in its use of the word "shall"– the consideration of some of Plaintiff's additional evidence here."  It is important to review the *Burlington* statement as to allowable circumstances and to review the extent and

scope of a court's discretionary powers."

IV

OTHER CIRCUIT DECISIONS
FIRST CIRCUIT BURLINGTON DECISION

8.     The First Circuit construes "additional evidence" to mean supplemental evidence which does not include the opportunity for witnesses at trial to repeat or embellish their prior administrative hearing testimony. However, the First Circuit also allows the supplementation of the administrative record at trial where witnesses were unavailable at the administrative hearing, where there was an improper exclusion of evidence by the administrative agency, or where there is evidence concerning relevant events occurring after the administrative hearing. *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790-791 (1st Cir. 1984), aff'd, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed.2d 385 (1985). The situation in the case at bar falls squarely in the narrow list of grounds for additional evidence as Dr. Ross was unable to testify at the original hearing and the hearing officer's actions with regard to the time allowed for the hearing unfairly excluded her testimony. The ruling in Burlington is very fair and balanced and will not result in excessive additional time or cost in resolving these cases and allowing the Plaintiff the additional evidence requested does nothing to undermine the administrative record and it would not be an abuse of discretion to allow it.. At some time, this issue will arrive at The Supreme Court due to the scope of the differences between the Circuits in handling this issue and this would seem to be a reasonable compromise.

If the Defendant claims it is up to the discretion of the court  to allow additional evidence or not it should be understood that this and other courts which talk about discretion are referring to the courts discretion relating to decisions as to whether the additional evidence fits the criteria set out in the case and not merely cumulative and whether to allow an evidentiary hearing or admit the evidence through other means (affidavits, depositions etc) and not whether additional evidence is permitted or not. If a court routinely rejects the addition of evidence presumably an appeal court would consider this to be an abuse of discretion if the criteria for allowing additional evidence has been met. See *Adam Wayne D   v. Beechwood Indep. School District*., 2012 WL. 1861041 (6th Cir. 2012 (non precedential).

9.      The Seventh and Ninth Circuit Courts of Appeal have concurred with the ruling of the *Burlington* court, stating that the word "additional" should be construed in the ordinary sense of the word to mean "supplemental," where the evidence generally will be the administrative hearing record, with some supplementation at trial. See *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472-73 (9th Cir. 1993).

10.      The Third and Fourth Circuit Courts of Appeal have adopted a somewhat more restrictive construction of "additional evidence." The Third Circuit has stated that while a district court appropriately may exclude additional evidence, it should consider additional evidence that is "relevant, non-cumulative and useful" in determining whether Congress' goal has been reached for the child involved. *Susan N. v. Wilson Sch. Dist*., 70 F. 3d 751, 759-60 (3rd Cir. 1995). The Fourth Circuit has held that a district court has discretion to deny a request for additional evidence which was not before the administrative hearing

officer if such evidence could have been available at the hearing. *DeLullo by DeLullo v. Jefferson County Bd. of Educ.*, 194 F.3d 1304 (4th Cir. 1999).

11.     In contrast, the Sixth Circuit applies a liberal standard for the admittance of additional evidence. It has held that such evidence shall be admitted to the extent that it sheds light on the reasonableness of the original decision, but not if the evidence brings up any new issues. *Metropolitan Board of Education v. Guest*, 193 F. 3d 457, 463 (6th Cir. 1999). However, even though the Sixth Circuit refused to adopt the Town of Burlington standard, it has stated that the determination of which additional evidence to allow rests within the sound discretion of the court, "which should take care to limit additional evidence to what is necessary." *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 850 (6th Cir. 2004). This case stated, "There is no prohibition in either statute or the case law, against the district court allowing even a large amount of additional evidence if it will add something to the administrative record or assist the court in deciding the issues before it." Thus, Plaintiff believes the additional evidence requested in his case fits that criteria and will assist the Court.

12.     The Eleventh Circuit has ruled that the determination of what, if any, additional evidence should be admitted in a U.S. District Court action must be left to the sound discretion of the court. *Walker County Sch. Dist. v. Bennett by Bennett*, 203 F.3d 1293, 1298 (11th Cir. 2000) (quoting Town of Burlington, 736 F.2d at 791. *Houston Independent School Dist. v. Bobby R.,* 200 F.3d 341, 347 (5th Cir. 2000) (emphasis added).

13.     The Eighth Circuit stated that the IDEA permits a reviewing court to admit additional evidence to supplement the record if a party has a solid justification for doing

so; however, rendering a decision on the record compiled before the administrative agency is the norm. *Indep. Sch. Dist. No. 283 v. S.D.ex rel. J.D.*, 88 F.3d 556, 561 (8th Cir. 1996). However, in *West Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782, 785 (8th Cir. 2006), the Eighth Circuit affirmed a district court's decision to entirely preclude the school district from supplementing the administrative record where the school district attempted to provide additional evidence related to the progress and status of L.W. subsequent to the administrative hearing. The district court's denial in that case was based on the lack of a "solid justification" for supplementing the administrative record where that record was "vast and detailed," and that "normally" the issues in that case were decided based solely on the administrative record. Id.

V.
OTHER ADDITIONAL EVIDENCE FOR IDEA CASE

14.     Two of the exhibits in the original administrative record (Exhibits 9 & 11) are recordings of MDR/ARD meetings. Exhibit 9 consists of three CD's of the MDR/ARD of 4/17/2017 and Exhibit 11 is one CD of the MDR/ARD of 10/17/2017.  Plaintiff has had the recordings transcribed by a court reporter to assist the Court in reviewing the administrative record. Plaintiff respectfully requests that they be allowed to add these two transcripts to the record but not to replace the recordings.

VI.
DISCLOSURE FOR SECTION 504, ADA AND SECTION 1983

15.     Allowing discovery for these additional claims is not the same as allowing additional evidence to the original administrative record. The fact that the Hearing Officer determined that a plaintiff has been provided an IDEA FAPE does not preclude the Section

504 and ADA claims. These claims are "predicated on the theories of liability under that statute and its implementing regulations….are not precluded by a determination that the student has been provided an IDEA FAPE. "*Ellerberg   v   N.M. Military Institute* 470 F 3d 1262   1281-82 (10th Cir. 2007) Plaintiff can pursue claims under the ADA and Section 504 claiming the student was precluded from receiving a state benefit provided to non-disabled peers. The denial FAPE in these claims is not the denial of FAPE but discrimination. *C.G.   v   Pa. Dept. of Educ.*  734 F. 3d. 229.235 (3rd. Cir.) 2013

16.    The Plaintiff has clearly stated sufficient facts to state a claim that is "plausible" on its face. *Bell Atlantic corp. v. Twombly. 550 U.S. 569 (2007).* Thus, the Section 504, ADA and Section 1983 claims should not be summarily dismissed, and the Plaintiff should be allowed the discovery necessary to pursue them. Which is the same situation in these claims before this Court. These claims are not repackaging of IDEA claims and if the IDEA appeal is dismissed it t does not make these claims redundant. There is a one-year period of limitations in Texas IDEA cases and only reimbursement or compensatory services (usually for a year) are available as remedies, thus access should not be denied to the greater remedies and specifically monetary damages available under Section 504 and the ADA in order to obtain justice for the intentional harm done.  *Marvin H v. Austin ISD*  714 F. 2d 1348 also asserts the right of a plaintiff to claims under IDEA as well as Section 504 and the ADA as confirmed in *D.A. v. Houston ISD (5th Circ.)*716 F. Supp. 2d 603 (S.D. Tex. 2009). This case also confirmed that preclusion is available only if the claims are not significantly different, as they are in the case at bar, due to the need for intentionality of the school districts actions which are not required under the IDEA. The resolutions of an

13

IDEA claim in the school district's favor will <u>frequcosently</u> (emphasis added) preclude other actions but obviously not always. The Plaintiff is not seeking a "general tort liability for educational malpractice" but is meeting the requirements in *Monahan 687 F 2d at 1170* to show the bad faith or gross misjudgment required for a 504 action, and thus the intentional discrimination required by 504 and ADA claims. Plaintiff is not merely disagreeing with the correctness of the educational services provided by the school district but alleging and proving that some of the school district's actions were intentional to cause harm to him over and above the denial of FAPE.

17.     The Section 1983 claim made by the Plaintiff is based upon the school districts policy and practice of holding Coordination of  Service staff meetings prior to special education students MDR hearings. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Civil Rights Act of 1991, 42U.S.C. §1981a.

18.     The elements of a Section 1983 case are "the deprivation of any rights, privileges or immunities secured by the Constitution and laws' by a "person acting" under "color" of state law. The "laws" referred to include those statutes that confer individual rights on a class of persons that include the Plaintiff"  It is the Plaintiff's belief that the school districts

use of a Coordination of Service meeting of staff (without the Plaintiff or his father present) prior to an MDR meeting is undertaken deliberately in order to discriminate against the disabled student and to ensure that the MDR decision is pre-determined and that all staff understand what is required from them at the MDR meeting and the decision the administration wants. There is no other valid reason or purpose for holding such meetings which clearly are contrary to the IDEA regulations for determining whether a particular behavior is a manifestation of the student's disability or not. The regulation requires all the information and data to be reviewed in the presence of all required participants. As the source of the data and information is held by the school district the Plaintiff needs to propound interrogatories and production requests to school district staff.

19.     The IDEA regulations on MDR meetings are as follows:

(e)Manifestation determination.

(1) Within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct, the LEA, the parent, and relevant members of the child's IEP Team (as determined by the parent and the LEA) must review all relevant information in the student's file[9], including the child's IEP, any teacher observations, and any relevant information provided by the parents to determine -

---

[9] Several OCR rulings stress that the MDR must consider all relevant information and consider a broad range of data that competent professionals would require making such a decision, thus Plaintiff is requesting the addition of Dr. Harris's expert opinion as to trauma of foster care and its long-term consequences. Congress's Conference Report stresses the need for additional information similar to the report of Dr. Harris.

(i) If the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or

(ii) If the conduct in question was the direct result of the LEA's failure to implement the IEP.

(2) The conduct must be determined to be a manifestation of the child's disability if the LEA, the parent, and relevant members of the child's IEP Team determine that a condition in either paragraph (e)(1)(i) or (1)(ii) of this section was met.  (emphasis added)

34 C.F.R. 300. 530 (e)

Congress made it clear in the following excerpt from the Conference report that the MDR was supposed to look at the behavior across settings and time:

> Congress offered the following comment regarding the MDR process:
> The Conferees intend to assure that the manifestation determination is done carefully and thoroughly with consideration of any rare or extraordinary circumstances presented. Additionally, it is the intention of the Conferees that when a student has violated a code of conduct school personnel may consider any unique circumstances on a case-by-case basis to determine whether a change in placement for discipline purposes is appropriate. The Conferees intend that if a change in placement is proposed, **the manifestation determination will analyze the child's behavior as demonstrated across settings and across time when determining whether the conduct in question is a direct result of the disability**. The Conferees intend that in situations where the local educational agency, the parent and the relevant members of the IEP team determine that the conduct in question is a direct result of the child's disability, a child with a disability should not be subject to discipline in the same manner as a non-disabled child.
> Conference Report at pp. 224-25 (note 237-245) (emphasis added); *see also* 71 Fed. Reg. 46720 (citing relevant portions of Conference Report).

It is the Plaintiff's contention that the Defendant's use of a Coordination of Service staff meeting deliberately thwarts the intention of Congress as to how MDR

16

meetings are held and how they reach the decisions. To prove this the Plaintiff requires certain discovery.

20.    The discovery (Interrogatories and Production) needed is as follows:

a) a list of all Coordination of Service staff meetings held prior to an MDR meeting in the last two years (June 1st, 2016-May 31ST, 2018), such list to be sub-divided by major disability of the special education student,

b) minutes and communications of any such Coordination of Service meetings or pertaining to them by and between the staff,

c) All MDR/ARD documents for all MDR hearings during the last two years.

d) all audit trails for all MDR/ARD meetings during the last two years,

e) copies of all special education due process hearings filed against Conroe ISD in the last two years which involves an appeal from an MDR decision,

f) Copies of all decisions rendered in due process hearings filed under (e)

g) Copies of all Federal Court Complaints filed against Conroe ISD in the last two years which involves appeals of due process administrative decisions involving contested MDR decisions.

All personally identifiable information should be redacted from all documents produced.

21.    The Plaintiff requires the audit trail of all MDR/ARD meetings as this information will demonstrate the pre-determination created by the Coordination of Service meetings. It will also show the amount of any changes to the paperwork during the MDR/ARD meeting it will also show the result of the decision and whether it is consistent with the decisions

made at the Coordination of Service meetings and also indicate the length of time of the meeting an indication as to whether the MDR/ARD participants truly did what the regulations require to be done to reach the decisions required. School districts all utilize specialized software for the conduct of MDR/ARD meetings. Once the meeting is finished the software is closed and locked and then copies can be printed. The district no longer has the initial draft document however the audit tail will show the original content and changes made. The Plaintiff requires this to prove that the decision is pre-determined and that this occurs in all cases and it is extremely rare for any change to be made. At the original administrative hearing the Plaintiff claimed that the decision in that case was pre-determined because the father noticed at the beginning of the MDR/ARD meeting when the paperwork was on the screen that the decision had already been entered on the paperwork. The school district witnesses claimed that that was either a mistake or that it was alright as it was only a draft and could be changed. However, if this is done in all cases then it adds weight to the Plaintiff's claims that these decisions are pre-determined and that the school district uses the Coordination of Service staff meetings to ensure the administration obtains the decision it wants. A copy of M.V.'s audit trail in his last MDR/ARD is attached hereto and marked as Exhibit "D". This is one sample page of the audit trial for Plaintiff's MDR/ARD held on 6/8/2017. This audit trail has ben notated to show the person making the change, the change itself, when the change was made and what the change consisted of.

## VII.
## CONCLUSION

22.    It is disingenuous for school districts to object to the admission of additional evidence when one of the most significant and important cases issued by the 5th Circuit in special education law depended upon additional evidence in the form of school witnesses being added to an administrative due process record after a one-day evidentiary hearing in the district court including two expert witnesses. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.,* 118 F.3d 245, 253, 255 (5th Cir. 1997), *cert denied*, 522 U.S. 1047 (1998)

Allowing the additional evidence requested by the Plaintiff in this case will not "nullify" the original administrative hearing nor will it make it a mere "dress rehearsal". All the requests are reasonable and necessary to prove up the claims made.

## VIII.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that the court allows Plaintiff to present the requested supplemental evidence by way of admitting the two transcripts of the recordings and the expert report of Dr. Harris and the deposition of Dr. Harris in the IDEA appeal proceedings administrative record and undertake discovery on their Section 504, ADA and Section 1983 claims by way of Interrogatories and Request for Production of Documents.

Respectfully submitted,

By:   /s/  Michael P. O'Dell

    Michael P. O'Dell
    State Bar No. 15192700
    Federal I.D. No. 69579
    1906 Willowlake Drive
    Houston, Texas 77077
    832-794-8908 - Telephone
    832-201-0489 - Facsimile
    ATTORNEY FOR THE PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th   day of June 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.

    /s/ Michael P. O'Dell
    Counsel for Plaintiff M.V.