**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| M.V. b/n/f/ J.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-401 |
| | § | |
| | § | |
| CONROE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

M.V. and his father, J.C., appeal the decision of a Texas Special Education Hearing Officer denying M.V.'s claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, against the Conroe Independent School District. In this court, M.V. asserted three additional claims: one under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; one under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and one under § 1983 of the Civil Rights Act, 42 U.S.C. § 1983. M.V. alleges that the District failed to provide him a free and appropriate public education, failed to implement his individualized education plan, and intentionally discriminated against him and other disabled students. (Docket Entry No. 1).

This memorandum and opinion addresses M.V.'s motion to admit additional evidence to the administrative record. (Docket Entry No. 12). He asks this court to admit the report of a psychologist, Dr. Gerald E. Harris, who was not designated and did not testify at the administrative hearing. Dr. Harris is offered as a replacement for Dr. Akalita Ross, a psychologist who M.V. designated to testify but who did not appear at the administrative hearing due to a scheduling conflict. Dr. Ross is no longer available as an expert in this case. (Docket Entry No. 12 at 4–5).

M.V. wants to depose Dr. Harris instead and include that deposition testimony and Dr. Harris's expert report in the record, to support his IDEA appeal and his other statutory claims. This memorandum and opinion also addresses M.V.'s motion to require the District to produce documents, minutes, and other materials related to the District's preparation for Manifestation Determination Review (MDR) and Admission, Review, and Dismissal (ARD) meetings for the last two years, for all the District's schools and students.

Based on the motion, response, and reply; the record; the applicable law; and the parties' arguments at a hearing held on August 27, 2018, the court finds that: (1) Dr. Harris's deposition testimony and the report significantly overlap with the existing administrative record, which includes the testimony of Dr. Graciela F. Reyes-McDonald, a psychologist who reviewed M.V.'s medical records; (2) M.V. failed to timely object before the hearing officer to the inability to present the additional psychologist's report and deposition testimony; (3) M.V.'s IDEA claim does not provide a basis for admitting the additional evidence; and (4) M.V.'s claims under the ADA, § 504 of the Rehabilitation Act, and § 1983 are not a basis for admitting additional evidence or allowing Carr's request for the discovery. With one exception, M.V.'s motion is denied, for the reasons explained in detail below.

I.      **Background**

M.V. was born in 2001. He qualifies for special education and related services as a student with Other Health Impairment, based on his diagnosis of Attention Deficit Hyperactivity Disorder. (Docket Entry No. 1, Ex. A at 2). M.V. has lived with J.C. since September 2012. (Docket Entry No.1 at 5). J.C. adopted M.V. in March 2013. M.V. has attended schools in the Conroe Independent School District since he entered the fifth grade in 2012. (*Id.*)

M.V. had several Full and Individual Evaluations by school districts to determine his eligibility for special education services. The 2010 and 2011 evaluation reports showed that M.V. was eligible for services as emotionally disturbed. (Docket Entry No. 1 at 5). The 2011 evaluation report also found that M.V. had a low average intellectual ability score and significant emotional issues affecting his academic performance.

In 2014, the District decided that M.V. no longer met the Texas Education Agency criteria for emotionally disturbed and that his behavior did not adversely impact his education. (Docket Entry No. 1 at 7). M.V. was, however, still eligible for special educational services.

M.V. also went through multiple Functional Behavior Assessments. The 2012 assessment reported that M.V. had difficulty sustaining the effort necessary for independent work and that he lied to teachers. (Docket Entry No. 1 at 5–6). The assessment included a Behavior Intervention Plan to address M.V.'s misbehavior. (*Id.*). The District provided two additional assessments for M.V., in March 2013 and May 2014, to address his physical aggression and absences from class. (*Id.*). The District did not recommend a Behavior Intervention Plan for M.V., but he was recommended for preferential seating near the teacher, reminders to stay "on task," and counseling. (*Id.* at 7).

The District's ARD Committee decides the placement of students, with their parents' participation. 34 C.F.R. § 300.116. M.V. alleges that it is the District's policy to have unscheduled and informal Coordination of Services meetings with District staff before ARD Committee meetings or MDR meetings with the parents and that the outcomes of the ARD Committee and MDR meetings are predetermined. (Docket Entry No. 12 at 2–3 & n.2–3).

In April 2017, while M.V. was in ninth grade, a rumor circulated at school that he had a "hit

list" and was going to attack other students. (Docket Entry No. 1 at 8). On April 28, 2017, the District held an MDR meeting. M.V. and J.C. participated. J.C. argued that the District's failure to provide M.V. adequate accommodation—particularly to keep his seat near the teacher—and M.V.'s disability had contributed to his inattention, poor executive functioning and peer relations, as well as to his learning problems. (Docket Entry No. 8–9). The District found M.V.'s misbehavior impulsive and unlinked to his disability. (*Id.*). After the MDR meeting, J.C. requested a due-process hearing, but the parties settled in mediation before the hearing. (Docket Entry No. 1 at 9). The settlement included the District's agreement to retrain personnel on MDR meeting procedures. (*Id.*).

On October 3, 2017, the school M.V. attended proposed to expel him for bringing two stun guns and prescription medication to school, in violation of the disciplinary rules. (Docket Entry No. 1, Ex. 1 at 2). M.V. admitted that he had brought the stun guns to school to sell for cash because J.C. did not allow him to have a job. (Docket Entry No. 1 at 9–10). M.V. also admitted bringing his brother's prescription Adderall to school, explaining that he found the generic form he was prescribed less effective than the name-brand Adderall his brother took. M.V. alleges that he brought the name-brand Adderall to school to improve his performance on a test he was scheduled to take that day.

At the MDR meeting to discuss the incident, the District projected a draft version of the expulsion decision on the screen for discussion. J.C. objected, alleging that the projected draft showed that the MDR meeting's outcome was predetermined. (Docket Entry No. 1 at 9–10). The District rejected J.C.'s objection and decided to expel M.V. Even so, the district deferred the expulsion for 135 school days. If M.V. had had no major behavior issues by the end of the 135 days,

his probated expulsion would be void. (*Id.*).

J.C. requested a due-process hearing on an expedited schedule under the IDEA after the MDR meeting. 34 C.F.R. § 300.532; Docket Entry No. 1 at 10. The regulations require an expedited hearing to be held within 20 school days after it is requested. 34 C.F.R. § 300.532(c). M.V's hearing was scheduled on an expedited basis for November 1, 2017, the last day.

M.V. had prepared two experts to testify, Dr. Reyes-McDonald and Dr. Ross, but Dr. Ross could not attend the hearing due to a scheduling conflict. M.V. did not ask to move the hearing to an earlier date so that both Dr. Ross and Dr. Reyes-McDonald could testify. The hearing officer rejected M.V.'s request for an extension made at the prehearing conference because of the regulation setting the deadline for the expedited hearing. (Docket Entry No. 17 at 367–75). M.V. did not object to the denial of the extension or to Dr. Ross's absence at the hearing.

The hearing was limited to four hours for each side, but the parties were allowed to ask for more time if needed. (*Id.*). Neither side asked for additional time or objected to the time limit. Neither M.V. nor the District used all the time allotted to them.

M.V. and J.C. raised two issues at the hearing: (1) the District had improperly predetermined the MDR meeting result; and (2) the District had incorrectly decided that M.V.'s disability did not cause, or have a direct or substantial relationship to, his misconduct. (Docket Entry No. 1, Ex. 1). The hearing officer found that the draft documents prepared and the Coordination of Services meetings held before the MDR meeting did not show predetermination. Instead, they were prepared to facilitate discussions during the MDR meeting. (Docket Entry No. 1, Ex. 1 at 2). The hearing officer sustained the MDR meeting decision to expel M.V., with the 135-day probation, and found that M.V.'s possession of the stun guns and the prescription medication did not have a direct or

substantial relationship to his disability.

M.V. appeals the hearing officer's decision, alleging that the officer improperly limited the time for the hearing, improperly found that M.V.'s behavior at school was not related to his disability, and improperly found that the District did not predetermine the MDR meeting result. (Docket Entry No. 1 at 2–3). M.V. also raises claims under the ADA, § 504 of the Rehabilitation Act, and § 1983, alleging that the District intentionally discriminated against him and other disabled students based on their disabilities. For his IDEA appeal and his other claims, M.V. moves to add to the administrative record an expert report by his newly designated psychologist, Dr. Harris, and asks the court for leave to depose Dr. Harris and to admit his deposition testimony. M.V. also asks the court to require the District to produce documents, minutes, and communications relating to all Coordination of Services, MDR, and ARD Committee meetings in the two years before the District decided to expel M.V. The District responses, asking the court to deny M.V.'s motion and to find that neither M.V.'s IDEA appeal nor his ADA, the Rehabilitation Act, or § 1983 claims support the discovery M.V. seeks.

## II.     The Admission of Additional Expert Testimony Under the IDEA

### A.     The ADA Appeal

When, as here, the appeal is from a state hearing officer's decision denying an IDEA claim, and additional federal claims under the ADA, § 504 of the Rehabilitation Act, and § 1983 are raised, the court may decide the IDEA claims first and, if it finds in favor of the District, apply issue preclusion to bar relitigation of the same facts under the other federal statutes. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 289–90 (5th Cir. 2005); *D.A. v. Hous. Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 618 (S.D. Tex. 2009).

"When a district court reviews a hearing officer's decision under the IDEA program, it receives the records of the administrative proceeding and also takes additional evidence at the request of any party." *Hous. Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 582–83 (5th Cir. 2009). The district court must make an independent decision based on the preponderance of the evidence. *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997). In reaching this decision, "courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 (5th Cir. 1982). State and local authorities have primary responsibility for educating children, and "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* at 207–08 & n.30. "The court must then give 'due weight' to the hearing officer's findings and make a de novo determination . . . ." *Pace*, 403 F.3d at 289 (citation omitted).

The IDEA provides that district courts "shall hear additional evidence at a party's request." 20 U.S.C. § 1415(i)(2)(C). "[S]everal circuits have held that limits exist to the extent of additional evidence that a party may submit to the reviewing court under this 'additional evidence' provision." *D.A.*, 716 F. Supp. 2d at 616 (quoting *Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d 577, 597 (W.D. Tex. 2006)). In *Town of Burlington v. Dept. of Educ. for Mass.*, 736 F.2d 773 (1st Cir. 1984), the First Circuit construed the word "additional" in the statute to mean "supplemental." *Id.* at 790. "[T]his clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional.'" *Id.* The First Circuit listed reasons that may justify supplementing the record with additional evidence: (1) gaps in the administrative transcript owing to mechanical failure; (2)

unavailability of a witness; (3) an improper exclusion of evidence by the agency; and (4) evidence concerning relevant events occurring subsequent to the administrative hearing. *Id.*

The Fifth Circuit has not addressed the IDEA's additional-evidence language, but many district courts, including in this district, have followed the majority of circuits and applied the *Burlington* standard to determine what is permissible "additional evidence." *See, e.g.*, *D.A.*, F. Supp. 2d at 616; *Marc V.*, 455 F. Supp. 2d at 588; *S.H. v. Plano Indep. Sch. Dist.*, No. 08-cv-96, 2009 WL 500180 (E.D. Tex. Feb. 27, 2009); *Burks v. Boglusa City Sch. Bd.*, No. 98-cv-1333, 1999 WL 627398 (E.D. La. Aug. 13, 1999).

Under the majority view, the admission of additional evidence under the IDEA is limited. *Marc V.*, 455 F. Supp. 2d at 588. Whether to allow additional evidence is within the district court's discretion. *Id.* That discretion is guided by the need to protect the administrative hearing as the primary forum to resolve disputes over a student's rights under the IDEA, and to avoid turning the administrative hearing into a "mere dress rehearsal," followed by an "unrestricted trial *de novo*" in the district court. *Schaffer v. Weast*, 554 F.3d 470, 476 (4th Cir. 2009) (internal quotations and citations omitted). Courts should limit or disallow testimony for witnesses who did, or who could have, testified in the administrative hearing. *Marc V.*, 455 F. Supp. 2d at 689. "In the absence of special circumstances, courts should ordinarily exercise [their] discretion in favor of excluding the belatedly offered evidence." *Id.* Additional evidence is not admissible if it is: (1) cumulative; (2) irrelevant; (3) bolsters of existing evidence; or (4) untimely. *Id.* Courts have refused to admit additional evidence that was available to the requesting party before the administrative hearing. *See, e.g.*, *D.A.*, 716 F. Supp. 2d at 617 (denying additional evidence of the plaintiff's medical expenses that was "surely available" to the plaintiff before the administrative hearing).

M.V. moves to add to the administrative record an expert report and deposition testimony from Dr. Harris, arguing that he reviewed M.V.'s foster history and education records and met with him for approximately an hour. (Docket Entry No. 12 at 5). M.V. provides two grounds for his motion. First, M.V. argues that the hearing officer improperly limited the hearing to four hours for each side, denying him a fair opportunity to present his case. (*Id.*). The District points out that the hearing officer allowed the parties to ask for more time if they needed it after four hours. (Docket Entry No. 17 at 373). At the hearing, M.V. rested without using all the time allotted, objecting to the time limit, or asking for additional time. (Docket Entry No. 17 at 641). Second, M.V. prepared two psychologists as his witnesses, but the administrative hearing was held on a day that one was unavailable. At the prehearing conference, M.V. asked the hearing officer to extend the hearing to allow both psychologists to testify. (Docket Entry No. 17 at 374). Under the statutory requirement for an expedited due-process hearing, a hearing officer cannot reschedule the hearing to a later date, but the officer may exercise discretion to "extend" the hearing for disciplinary matters. 19 TEX. ADMIN. CODE § 89.1191(1), (5). That was not done here. The officer rejected M.V.'s request for a later date. (Docket Entry No. 12 at 3–5). M.V. alleges that this deprived him of the opportunity to present evidence connecting his behavior and disability. However, M.V. did not mention his second expert at the hearing or object to the inability to call this witness. Nor did M.V. raise the possibility of having the hearing on an earlier date to allow this second psychologist to be present. (Docket Entry No. 13 at 7).

Dr. Harris's report that M.V. asks the court to add to the record substantially overlaps with the evidence already in that record. M.V. argues that the Dr. Harris's report will provide a "forensic review of the documentation and M.V.'s foster history and educational records," and that Dr. Harris

9

will testify as to the "manifestation of M.V.'s disability in connection with his behavior and the discipline he faced." (Docket Entry No. 12 at 5). The District points out that M.V.'s history and its impact on his emotional and behavioral functioning had been assessed in numerous evaluations and were reviewed by the District's expert and by Dr. Reyes-McDonald, the psychologist who testified for M.V. during the hearing. M.V.'s foster history, medical background, and educational history were all discussed at the hearing, by M.V. himself, J.C., and Dr. Reyes-McDonald. At the oral argument before this court, counsel for M.V. acknowledged that Dr. Reyes-McDonald has covered much of the material that would be testified to by Dr. Harris and covered in his expert report. Neither Dr. Reyes-McDonald nor Dr. Harris treated M.V. Dr. Harris spent an hour with M.V. and reviewed his records; Dr. Reyes-McDonald saw M.V. at the hearing and reviewed his records. Dr. Reyes-McDonald addressed the impact of M.V.'s history on his behavior, as well as the MDR and ARD Committee meetings and procedures. Dr. Reyes-McDonald's testimony, already in the record, substantially overlaps with what M.V. has identified as the subjects that Dr. Harris's report and proposed deposition testimony would also cover.

M.V. cites § 1415(i)(2)(C) of the IDEA, which provides that "the court *shall* hear additional evidence at the request of a party," 20 U.S.C. § 1415(i)(2)(C) (emphasis added), and argues that the psychologist's report and deposition must be admitted. Contrary to M.V.'s argument, however, "shall" does not always mean "must." *See Marc V.*, 455 F. Supp. 2d at 589; Bryan A. Garner, GARNER'S DICTIONARY OF LEGAL USAGE 952–55 (3rd ed. 2011); Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 112–15 (2012).

M.V. failed to raise the issue of an additional expert witness during the administrative hearing. The report and deposition testimony that he asks the court to add address issues of M.V.'s

foster history and medical background that largely overlap with the evidence already in the administrative record. Because the added expert and deposition are cumulative and untimely proffered, the motion for admission is denied.

**B.      The Discovery Requests Relating to the ADA, § 504, and § 1983 Claims**

M.V. also moves for discovery of documents relating to the District's Coordination of Services, ARD Committee, and MDR meetings, including minutes, communications, and audit trail documents for the last two years. (Docket Entry No. 12 at 17). These documents are for all students, not just M.V., and for all schools across the District, not just the school M.V. attended. M.V. argues that these documents are relevant to his ADA and Rehabilitation Act claims that the District predetermined MDR meeting results based on discrimination against disabled students.

M.V. raised the predetermination issue at the administrative hearing. The hearing officer found that the District did not violate the IDEA because the Coordination of Services meetings were used to prepare for the MDR meting, not to decide the results in advance. (Docket Entry No. 1, Ex. A at 3). The officer found no IDEA violation and no deprivation of a free and appropriate public education.

M.V. asks for these documents as relevant to his intentional discrimination claims under the ADA, § 504, and 1983. The District objects to the broad discovery request, arguing that: (1) M.V. did not exhaust his administrative remedies; (2) M.V. has failed to state a claim under the ADA and the Rehabilitation Act because his IDEA claim fails, and the only ground for M.V's ADA and § 504 claims depends on elements necessary for an IDEA violation; (3) M.V. has failed to allege facts showing the District's bad faith or gross misjudgment, which are necessary elements for recovery under the ADA and § 504; and (4) M.V. does not have a cause of action under § 1983. (Docket

Entry No. 13 at 17).

### 1. Exhaustion

The IDEA "requires states and local educational agencies receiving federal IDEA funds to make a [free and appropriate public education] available to children with certain disabilities between the age of 3 and 21." *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 989 (5th Cir. 2014) (quoting *Pace*, 403 F.3d at 290–91). "The IDEA imposes extensive requirements on schools to safeguard the disabled child's right to a [free and appropriate public education]." *Pace*, 403 F.3d at 290–91. It establishes administrative procedures for resolving complaints "relating to the identification, evaluation, or educational placement of the child . . . ." 20 U.S.C. § 1415(b)(6). A plaintiff must exhaust these procedures before suing under the IDEA. *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992). The Supreme Court has held that the IDEA exhaustion requirements apply with equal force to non-IDEA claims if the plaintiff uses them to "seek relief for the denial of a [free and appropriate public education]." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017). The court must look to the "substance, or gravamen, of the plaintiff's complaint." *Id.* at 755–56. Courts may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute. *Id.* Pursuit of the IDEA's administrative remedies is often strong evidence that the substance of a plaintiff's claim is an IDEA claim of the denial of a free and appropriate public education. *Id.* at 756.

M.V. asserted claims under the ADA and § 504, alleging that the District violated the IDEA's procedural and substantive requirements. (Docket Entry No. 1 at 33–35). M.V. went through the state administrative hearing before suing in federal court. The substance of M.V.'s

claims is to seek relief for the denial of a free and appropriate public education. M.V. alleges a series of IDEA violations to support his ADA and § 504 claims. The hearing officer decided that the District properly found that M.V.'s disability was not linked to his behaviors, did not predetermine the decision to expel M.V. before the MDR meeting, and did not exclude M.V. and J.C. from meaningful participation in the MDR meeting. (Docket Entry No. 1 at 33–35). M.V.'s other allegations arise from the April MDR meeting, after which M.V. filed for a due-process hearing but settled with the District before that hearing. These allegations include that the District failed to provide a reevaluation to verify M.V.'s disability, failed to provide sufficient accommodation when it changed M.V.'s seat away from the teacher, and failed to train the ARD Committee members, as it agreed to do in the settlement with J.C. (Docket Entry No. 1 at 8–9, 34–35). M.V. did not raise his challenges to the April MDR meeting before the state hearing officer. M.V. cannot raise these challenges now to assert ADA and § 504 claims in the district court because he has not exhausted his state administrative remedies for these claims.

### 2. Preclusion

The IDEA requires states and local educational agencies receiving federal IDEA funds to provide a free and appropriate public education to children with disabilities. *Pace*, 403 F.3d at 290–91; 20 U.S.C. § 1414. Section 504 and the ADA broadly prohibit discrimination against disabled persons in federally assisted programs or activities. *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing 29 U.S.C. § 794(a); 42 U.S.C. § 12132). "In short, the IDEA guarantees individually tailored educational services, while [the ADA] and § 504 promise non-discriminatory access to public institutions." *Fry*, 137 S. Ct. at 756. The "statutory difference" allows plaintiffs to sue under the ADA and § 504 to "seek relief for simple

discrimination, irrespective of the IDEA's [free and appropriate public education] obligation." *Id.*

A plaintiff may assert claims under the IDEA and the ADA and § 504 in the same suit. *Estate of Lance*, 743 F.3d at 990–93; *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983); 20 U.S.C. § 1415 ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available . . . under the Americans with Disabilities Act of 1990 . . . title V of the Rehabilitation Act of 1973 . . . or other Federal laws protecting the rights of children with disabilities. . . ."). "[T]o establish a claim for disability discrimination, in the education context, 'something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown.'" *D.A.*, 629 F.3d at 454 (quoting *Monahan v. State of Neb*, 687 F.2d 1164, 1170 (8th Cir. 1982)). At a minimum, a plaintiff must allege a denial of a free and appropriate public education under the IDEA to sustain a § 504 claim based on the denial of a § 504 free and appropriate public education. *Id.* Section 504 states that "adopting a valid Individualized Education Plan is sufficient but not necessary to satisfy the § 504 [free and appropriate public education] requirements." *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008); *see* 34 C.F.R. § 104.36; *see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013) ("Because a school district's provision of a [free and appropriate public education] under the IDEA meets Section 504 [free and appropriate public education] requirements, a claim predicated on finding a violation of the Section 504 [free and appropriate public education] standard will fail if the IDEA [free and appropriate public education] requirement has been met."); *Estate of Lance*, 743 F.3d at 992–93 (examining other circuit courts' decisions).

The Fifth Circuit has applied issue preclusion when the legal standards underlying the IDEA and the ADA and § 504 claims are not "significantly different." *Pace*, 403 F.3d at 290. "Issue

preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Id.* (citing *Southmark Corp.v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir. 1999)).  Resolving the IDEA claims in a school district's favor precludes a plaintiff's resort to redundant claims under the ADA and § 504. *Ind. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996).  Courts allow intentional discrimination as a basis to support a plaintiff's claim under the ADA and § 504 only if the plaintiff's claim does not depend on facts that establish or support an IDEA breach. *See, e.g.*, *R.S. ex rel. Smith v. Starkville Sch. Dist.*, No. 1:12-cv-0088-SA-DAS, 2013 WL 5295685, at *11 (N.D. Miss. Sept. 19, 2013) (the plaintiff's ADA claim was not precluded because the plaintiff alleged that the defendant removed him from the football team based solely on his disability, which is beyond the IDEA's protection); *S.F. v. McKinney Indep. Sch. Dist.*, No. 4:10-cv-323, 2012 WL 718589, at *19 (E.D. Tex. Mar. 6, 2012) (allowing a plaintiff's ADA claim when it did not arise under the IDEA).

M.V.'s claims under the ADA and § 504 are all based on the District's alleged IDEA violations.  M.V. asserts that the District did not comply with the IDEA's procedural requirements for MDR meetings and failed to provide him with individualized evaluation programs to address his behavior problems.  (Docket Entry No. 1 at 33).  M.V. also alleges that the District refused to provide him reasonable accommodations necessary for him to receive the full benefits of the school programs.  (*Id.*).  His claims under the ADA and § 504 would fail if the court finds that the District did not violate the IDEA, or the same factual and legal issues would have to be relitigated to resolve M.V.'s ADA and § 504 claims. *See Pace*, 403 F.3d at 293 (the plaintiff's ADA and § 504 claims were precluded because the school district complied with its legal obligations under the IDEA).

M.V. argues that his ADA and § 504 claims are under a "significantly different legal standard" from the IDEA claim because the ADA and § 504 require intentional discrimination, which the IDEA does not. (Docket Entry No. 12 at 14). M.V. asserts that some of the school district's actions were intended to cause harm "over and above the denial of a [free and appropriate public education]," but he does not allege facts to support this assertion. At the hearing before this court, M.V.'s counsel acknowledged that the factual basis for M.V.'s ADA and § 504 claims was the same as the factual basis for his IDEA claims. M.V.'s counsel cited no authority to support his argument that the "intentionality element," by itself, is a "significantly different legal standard" that prevents issue preclusion.

M.V. does not raise other factual bases for his ADA and § 504 claims that could stand despite finding that he was not denied a free and appropriate public education under the IDEA. For example, there is no allegation of peer-on-peer harassment based on M.V.'s disabilities, or an allegation that M.V. qualified for some services under the ADA or § 504 that he did not qualify for under the IDEA.

Issue preclusion requires that the IDEA claim be necessarily and adequately litigated. *Pace*, 403 F.3d at 290. The parties will necessarily litigate M.V.'s claim of the denial of a free and appropriate public education in resolving his IDEA claim. Intentionality will not be litigated in that action and it does not need to be. The ADA and § 504 require a plaintiff to show intentional discrimination; the IDEA does not. *D.A. ex rel. Latasha A.*, 629 F.3d at 454–55. If the "intentionality element" by itself could establish a significantly different legal standard, issue preclusion would be a nullity in this context, which is inconsistent with long-established Fifth Circuit precedent. Because all the issues that would be necessarily and adequately litigated to decide

the IDEA claims are also necessary—but not sufficient—to resolve the ADA and § 504 claims, M.V.'s ADA and § 504 claims are precluded if the court first finds in the District's favor under the IDEA. That makes the document discovery M.V. seeks at least premature.

### 3.    Rule 12(b)(6)

The District asserts that "M.V.'s Complaint fails to state a claim under Section 504 and the ADA," (Docket Entry No. 13 at 15), which is essentially a motion to dismiss. Rule 8 requires a plaintiff to allege "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a) (2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

A "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Mere "naked assertion[s]" devoid of "further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be

true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

"[A] cause of action is stated under § 504 when it is alleged that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *D.A. ex rel. Latasha A.*, 629 F.3d at 454–55 (quoting *Marvin H.*, 714 F.2d at 1356)). To prevail, a claimant must show "something more than a mere failure to provide the 'free appropriate education' required by the IDEA," by alleging the district's "bad faith or gross misjudgment." *Id.* (citing *Monahan*, 687 F.2d at 1170). The same rule applies to ADA claims. *Id.* at 455.

M.V. contends that the District intentionally discriminated against him because it failed to provide him with a free and appropriate public education and did not comply with the IDEA's procedural requirements. (Docket Entry No.1 at 33–35). M.V. does not allege or point to facts to support his intentional discrimination claim beyond those he cites to support his IDEA claim. M.V. does not allege facts that could support an inference of the District's "bad faith" in the MDR or Coordination of Services meetings. *See, e.g.*, *D.A. ex rel. Latasha A.*, 629 F.3d at 455 (finding no more than negligence in an untimely *diagnosis* of the plaintiff's psycho-educational problems and denying the ADA and § 504 claims as a matter of law).

M.V. asks the court to require the District to produce documents about the MDR and Coordination of Services meetings in the last two years for all students and schools in the District. (Docket Entry No. 12 at 17). But M.V.'s complaint, by itself, provides no factual allegations sufficient to support a plausible claim for relief under the ADA and § 504 based on these MDR and Coordination of Services meetings. There is no basis in the present record to permit the broad and

18

burdensome discovery M.V. seeks.


### 4. § 1983

M.V. also asserts a § 1983 claim based on the District's alleged violations of the IDEA, ADA, and § 504 of the Rehabilitation Act. (Docket Entry No. 12 at 14–15). The District objects to this claim as a basis for M.V.'s discovery request for production of MDR and Coordination of Services meetings across the District's schools, arguing that M.V. does not allege a valid cause of action under § 1983.

Section 1983 provides a cause of action for plaintiffs who are deprived of federal rights under the color of state law. *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To sustain a § 1983 action for violations of a statutory right, a plaintiff must allege sufficient facts to support an inference that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005); *Gonzaga Univ. Doe*, 536 U.S. 273, 286 (2002). A defendant may defeat this presumption by demonstrating that Congress did not intend that remedy to give rise to a newly created right. *Abrams*, 544 U.S. at 120. "[E]vidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive

enforcement scheme that is incompatible with individual enforcement scheme under § 1983.'" *Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)). Congress's inclusion of private remedial provisions in a statute ordinarily indicates that Congress did not intend to "leave open a more expansive remedy under § 1983." *Id.* at 121, 125. This ordinary inference can be overcome by a "textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Id.* at 122.

The Fifth Circuit has held that violations of the ADA and § 504 cannot be enforced under § 1983 because Congress has created a "specific comprehensive internal enforcement mechanism to protect the rights of the disabled" in the ADA and the Rehabilitation Act. *Lollar v. Baker*, 196 F.3d 603, 609–10 (5th Cir. 1999). Applying the same reasoning, the Fifth Circuit recently joined other circuits that have addressed this question to hold that the IDEA is a "carefully calibrated mechanism" that precludes § 1983 claims based on the same facts. *D.A. ex rel. Latasha A.*, 629 F.3d at 456–57.

M.V.'s § 1983 claim is based only on the alleged denial of a free and adequate public education. The claim is precluded, and M.V.'s discovery request based on that claim is denied.

### 5. Admission of Transcripts for the MDR and the ARD Committee Recordings

Two exhibits in the administrative record are recordings of M.V.'s MDR and ARD Committee meetings on April 17 and October 17, 2017. (Docket Entry No. 12 at 12). M.V. had the recordings transcribed by a court reporter and asks this court to include the transcripts in the record. The District did not object. The transcripts may be included in the record.

## III. Conclusion

M.V.'s motion to admit his newly designated psychologist's report and deposition to the

administrative record is denied.  Because M.V.'s claims under the ADA and § 504 of the Rehabilitation Act will be precluded if the District prevails on the IDEA claim, and there is no cause of action under § 1983, the discovery requests based on these claims are denied.  The MDR and Coordination of Services meeting transcripts may be included in the record.

SIGNED on September 24, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge